IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2009-NMCA-113

Filing Date:  August 19, 2009

Docket No. 28,353

OS FARMS, INC., a New Mexico
corporation,

       Plaintiff/Petitioner-Appellee,

v.

NEW MEXICO AMERICAN WATER
COMPANY, INC., a New Mexico
corporation, and ALL UNKNOWN
CLAIMANTS OF INTEREST in the
premises adverse to Plaintiff,

       Defendants,

and

NEW MEXICO PUBLIC REGULATION
COMMISSION,

       Respondent-Appellant.

APPEAL FROM THE DISTRICT COURT OF ROOSEVELT COUNTY
Drew D. Tatum, District Judge

J. Edward Hollington & Associates
J. Edward Hollington
Albuquerque, NM

for Appellee

New Mexico Public Regulation Commission
Robert Hirasuna, General Counsel
David P. Barton, Associate General Counsel
Santa Fe, NM

1

for Appellant

**OPINION**

**SUTIN, Judge.**

**{1}**     In this action, we determine whether the New Mexico Public Regulation Commission (the Commission) has the jurisdiction to void a public utility's sale of real property when the sale required but did not receive prior approval by the Commission pursuant to NMSA 1978, Section 62-6-12(A)(4) (1989).  The district court ruled that the Commission did not have jurisdiction to void the sale transaction and prohibited it from deciding the validity of the consummated sale and its accompanying deeds.  The Commission appeals and contends that the Commission had exclusive jurisdiction over the sale transaction, including making determinations that would render the sale transaction void.

**{2}**     We hold that the Commission has exclusive jurisdiction under Section 62-6-12(A) to determine whether the sale was required to be approved.  We further hold that because that issue has not been adjudicated by the Commission, because it is uncertain from a legal standpoint what will occur once this determination is made, and because the record is inadequately developed as to whether the Commission or the district court is to address whether the sale transaction is void, the issues of jurisdiction and action to void the sale transaction and deeds are premature and not ripe for our review.  Accordingly, we remand this case for further proceedings.

**BACKGROUND**

**{3}**     In 2004, OS Farms, Inc. (Farms) purchased 5,325 acres of land, located in Curry and Roosevelt Counties, New Mexico (the property), from New Mexico American Water Co., Inc. (American), a public water utility regulated by the Commission.  After Farms and American signed a purchase agreement covering the property and Farms paid the purchase price, American executed and delivered deeds to Farms.  American reserved or attempted to reserve all water rights to its own use.  The deeds were recorded.  We refer to this transaction involving the property as "the sale of the property."  Farms has continuously occupied and farmed the property and has paid the related property taxes.

**{4}**     In May 2006, American filed an advice notice and proposed revised rates with the Commission pursuant to which American sought to adjust its service rates for its Clovis and Edgewood, New Mexico, service districts.  A hearing examiner considered the rate-related issues, and in February 2007, issued a 114-page recommended decision, two pages of which were devoted to the sale of the property.  The hearing examiner stated the following:

>          [American] purchased the . . . property to acquire water rights, existing irrigation wells and equipment, and potential locations for additional wells for its Clovis district.  Recognizing that the land had potential value for

2

dry-land agricultural uses, [American] decided the land should be sold, reserving the necessary easements and water rights. [American] argued that the sale would reduce utility plant investment and decrease the cost of maintaining the property. [American] asserted that, at the time, it believed that Commission approval was only required to sell regulated assets or assets deemed used and useful in its utility operations. Since dry land was not used and useful, [American] did not believe that Commission approval was required.

{5}     The hearing examiner noted that Commission staff asserted that "prior Commission approval was required for the sale of the . . . [property] . . . under . . . Section 62-6-12(A)(4)." Section 62-6-12 reads, in pertinent part, as follows:

> **Acquisitions, consolidations, etc.; consent of commission**.
>
>       A.  With the prior express authorization of the commission, but not otherwise:
>
>             . . . .
>
>       (4)       any public utility may sell, lease, rent, purchase[,] or acquire any public utility plant or property constituting an operating unit or system or any substantial part thereof; provided, however, that this paragraph shall not be construed to require authorization for transactions in the ordinary course of business.
>
>       B.       Any consolidation, merger, acquisition, transaction resulting in control or exercise of control, or other transaction in contravention of this section without prior authorization of the commission shall be void and of no effect.

{6}     The hearing examiner found that substantial evidence supported "the conclusion that this property and its accompanying water rights were purchased to provide service to the Clovis District, and that the unauthorized sale of this property potentially affects water service in [American's] Clovis district." The hearing examiner also determined that "[t]he sale of the property was not in the ordinary course of business." The hearing examiner concluded that American failed to obtain the Commission's prior approval of the sale and that pursuant to Section 62-6-12, the sale was void and should be declared void by the Commission.

{7}     In June 2007, the Commission entered a final order partially adopting the hearing examiner's recommended decision. The Commission stated:

> [American] states that it entered into the sale in order to reduce its utility plant investment and decrease the cost of maintaining the property. [American] initially believed that Commission approval was not required for

3

the sale. However, because it now appears that [Farms] may be able to appropriate limited amounts of water for [Farms'] livestock that is now on the property, [American] now agrees with Staff that prior Commission approval was required for the sale of land . . . under [Section] 62-6-12(A)(4).

The Commission declined, however, to either decide the issue of prior approval or to declare the sale void without first providing Farms with notice and an opportunity to respond. The Commission required American to file a petition for a declaratory order requesting the Commission to determine whether the sale of the property was void under Section 62-6-12(B) and to serve Farms with the petition.

{8}     In August 2007, American filed a petition with the Commission to declare the sale of the property void under Section 62-6-12. Farms filed a motion to intervene for the limited purpose of moving to dismiss for lack of jurisdiction. The Commission permitted Farms to intervene. In an order denying Farms' motion to dismiss, the Commission described Farms' contentions and American's response as follows. Farms contended in its motion that because the Commission's jurisdiction extended only to public utilities, the Commission had no jurisdiction over Farms or to affect Farms' property rights. Farms argued that, under case precedent, the Commission had no power to adjudicate purely private matters between a utility and an individual and that the only action the Commission could take under American's petition was to assess a penalty against American pursuant to NMSA 1978, Section 62-12-4 (1993), which permits penalties for failure to comply with the Public Utility Act. American responded to Farms' motion and argued that the Commission was not attempting to assert jurisdiction over Farms and that Farms voluntarily participated by filing its motion to intervene.

{9}     After addressing Farms' motion to dismiss, in an October 16, 2007, order the Commission determined that American's petition did not seek to assert jurisdiction over Farms but instead sought solely a Commission determination whether American violated Section 62-6-12(A)(4), which violation, according to the Commission, would render the sale void. The Commission also determined that it could assess a penalty against American for any violation of Section 62-12-4 and that "[a] Commission order penalizing [American] must be accompanied by a determination that [American] violated Section 62-6-12(A)(4) by its transfer of the . . . [p]roperty," and further that "[a]ny such determination would, under the plain provisions of Section 62-6-12(A)(4), automatically render that transfer void as a matter of law." Further, the Commission stated:

> [Farms] finally argues that because the Commission does not have jurisdiction over [Farms], [Farms] should not be required to participate in this proceeding. [Farms] also complains that if [it] does not participate in this proceeding, it is more likely that the Commission would find the sale of the . . . [p]roperty to have violated Section 62-6-12. However, if [Farms] does participate in this proceeding in order to protect its rights, it increases the possibility that the findings of the Commission will be given more weight in a proceeding in district court. Again, [Farms] misapprehends the nature of this proceeding. As made clear by the procedural schedule set forth below,

the Commission is not requiring [Farms], or any other interested party not subject to the Commission's jurisdiction, to participate in this proceeding. Rather, the Commission is affording all interested persons, including [Farms], the *opportunity* (but not the obligation) to participate in this proceeding as a party in order to protect whatever interest they may have that may be affected by the outcome of this proceeding. [Farms], and any other interested party other than [American], are free to participate or not participate in this case as they see fit. And while [Farms'] decision to participate or not may raise complex legal issues for [Farms] to consider, that fact has little or no bearing on whether the Commission has the jurisdiction to act on [American's] [p]etition.

The Commission entered an order denying Farms' motion to dismiss and determining that it had jurisdiction and authority to issue a declaratory order as to whether American violated Section 62-6-12(A)(4). The Commission's order stated that "[a]ny person . . . desiring to become a party to this case and file a response to the [p]etition must first file a formal motion for leave to intervene."

{10} Before the Commission's aforementioned October 16, 2007, order was entered, Farms, on October 9, 2007, filed an action in district court against American. On November 1, 2007, Farms filed an amended complaint against American, together with a verified petition for a writ of mandamus against the Commission seeking to prohibit the Commission from declaring the sale transaction void and from making findings, orders, or decisions regarding the validity, interpretation, enforceability, performance, or breaches relating to the sale contract and deeds.

{11} In its amended complaint, Farms sought to quiet title to the property based on its purchase of the property and the recorded deeds. Farms also claimed slander of title based on American's allegations before the Commission that the deeds were void. It further claimed damages for breach of contract based on American's actions, including American's threats that if Farms did not sell the property back to American, American would pursue relief before the Commission. In addition, the amended complaint included claims against American for breach of the covenant of good faith and fair dealing, malicious abuse of process, and violation of the New Mexico Unfair Practices Act.

{12} The district court issued a peremptory writ of mandamus on November 1, 2007, requiring the Commission to show cause why a writ of mandamus should not issue. On November 14, 2007, the Commission filed a verified petition in our Supreme Court seeking a writ of prohibition or writ of superintending control to stay the district court proceeding and for further relief. The Supreme Court denied the petition on December 6, 2007.

{13} While the matter was pending in the Supreme Court, on November 26, 2007, the Commission filed a response and motion to dismiss and requested that the peremptory writ be quashed on the ground that it should have been an alternative writ. The Commission does not raise this specific ground in the present appeal and, therefore, there is no issue on appeal as to whether this peremptory writ was defective because it was not labeled an alternative

5

writ. The writ states that a copy of Farms' verified petition was attached to the writ "as required by Rule 1-065[(E)] NMRA." However, the writ in the record on appeal does not contain any attachment. Farms acknowledges that the peremptory writ was, in fact, an alternative writ. *See* NMSA 1978, § 44-2-6 (1884) (describing alternative and peremptory writs). The district court heard argument on November 27, 2007, and issued a letter ruling on December 6, 2007, finding "that the [Commission] does not have authority to make legal determinations as to the validity, interpretation, enforceability, performance, or breaches of contract and deed between [Farms] and [American]."

**{14}**    The court made a number of determinations in support of its ultimate finding. The court agreed with Farms that the Commission has jurisdiction with statutory authority to determine whether a public utility must obtain the Commission's approval "<u>before</u> executing a contract," but that once the utility enters into a contract and executes deeds, as in the present case, any dispute "relating to the construction, interpretation, and validity of the contract and deeds are matters to be determined by courts." The court also determined that because the Commission did "not have original jurisdiction over the parties with regard to determinations of contract law" and, as well, "is not authorized under statute to make determinations as to contract law," Farms was not required to "exhaust[] all remedies prior to seeking relief herein."

**{15}**    In addition, the court relied on this Court's decision in *Summit Properties, Inc. v. Public Service Co. of New Mexico*, 2005-NMCA-090, 138 N.M. 208, 118 P.3d 716, considering *Summit Properties* "to be on[]point to the issues in this matter." The district court pointed out that *Summit Properties* considered the dispute by a private entity against a public utility and a city to be "of a private nature relating to the public utility's actions" and not to be a matter of public concern, and the court held that the Commission did not have original jurisdiction over the dispute between Farms and American. The court further pointed out that in *Summit Properties* this Court stated the general rule to be that "jurisdiction over contract or tort claims made against a public utility usually rests with the courts." *Id.* ¶ 11.

**{16}**    With *Summit Properties* in hand, the district court noted that the Commission had provided no authority "definitively assert[ing] the existence of . . . jurisdiction over private third parties subsequent to contract execution as matters relate to legal validity of the contract." Further, the court repeated a statement made by Commission counsel that "public utility companies [that] violate . . . [Section] 62-6-12 may be subject to penalties." The court noted that allowing the Commission to void an executed contract would "not allow a neutral third party to the contract affordable opportunities to have a legal determination made by a court of law as to the construction, interpretation[,] and validity of the contract as well as damages." The court saw the critical fact to be that Farms and American entered into their contract before any approval process took place. The court concluded that, based on the ruling in *Summit Properties* and the facts of the present case, the claims against American involving the contract and deeds were within the jurisdiction of the district court.

**{17}**    On December 27, 2007, the district court entered a permanent writ of mandamus commanding the Commission to "[c]omply with the mandatory non-discretionary duty to

refrain from making any findings, decisions, or orders as to whether the [d]eeds and [c]ontract between [Farms] . . . and [American] . . . are void" and prohibiting the Commission from "making any finding, decision, or order about the validity, interpretation, enforceability, performance, or breaches of the [c]ontract and [d]eeds." This writ also expressly stated that it was "limited in scope, and the authority of the [Commission] to make a determination as to whether [American] should have obtained approval is not affected by this Writ."

{18} The Commission appeals the permanent writ of mandamus to this Court and asserts two points: (1) the writ was procedurally and legally defective because it was flawed by procedural defects and because adequate remedies exist in administrative proceedings and appeal from a Commission final order, and (2) the court erred in ruling that the Commission did not have jurisdiction.

## DISCUSSION

### Standard of Review

{19} This appeal involves statutory construction. "Statutory interpretation is an issue of law, which we review de novo." *N.M. Indus. Energy Consumers v. N.M. Pub. Regulation Comm'n*, 2007-NMSC-053, ¶ 19, 142 N.M. 533, 168 P.3d 105. "When construing statutes, our guiding principle is to determine and give effect to legislative intent." *Id*. ¶ 20. We begin with the plain language of the statute. *Id*. ¶¶ 20, 21. This appeal also involves the application of law to undisputed facts, which we also review de novo. *See Jicarilla Apache Nation v. Rodarte*, 2004-NMSC-035, ¶ 24, 136 N.M. 630, 103 P.3d 554; *Bonito Land & Livestock, Inc. v. Valencia County Bd. of Comm'rs*, 1998-NMCA-127, ¶ 5, 125 N.M. 638, 964 P.2d 199.

### The Constitution and Laws Relating to the Commission

{20} The Commission is created in Article XI, Section 1 of the New Mexico Constitution, and its general duties are stated in Article XI, Section 2. Section 2, in part, states:

> The public regulation commission shall have responsibility for chartering and regulating business corporations in such manner as the [L]egislature shall provide. The commission shall have responsibility for regulating public utilities, including electric, natural gas[,] and water companies[.]

Pursuant to statute, the Commission has "general and exclusive power and jurisdiction to regulate and supervise every public utility in respect to its rates and service regulations . . ., all in accordance with the provisions and subject to the reservations of the Public Utility Act, and to do all things necessary and convenient in the exercise of its power and jurisdiction." NMSA 1978, § 62-6-4(A) (2003). As quoted earlier in this opinion, the Commission must give "prior express authorization" for a sale by a public utility of "any . . . property constituting an operating unit or system or any substantial part thereof[.]" Section 62-6-

7

12(A)(4). In addition, "[a]ny . . . transaction in contravention of this section without prior authorization of the [C]ommission shall be void and of no effect." Section 62-6-12(B). In regard to appellate review, a party in a proceeding before the Commission is given a statutory right of appeal to the Supreme Court for review of a final order of the Commission. NMSA 1978, § 62-11-1 (1993).

**Whether the Writs Were Procedurally Defective**

{21}    Preliminarily, we note that the Commission does not attack the authority of the district court to issue the writ of mandamus. *See* NMSA 1978, § 62-12-2 (1941) (authorizing mandamus action against the Commission); *State ex rel. Sandel v. N.M. Pub. Utility Comm'n*, 1999-NMSC-019, ¶¶ 10-11, 127 N.M. 272, 980 P.2d 55 (holding that a writ of mandamus was an appropriate means of vacating a Commission order); *State ex rel. Bird v. Apodaca*, 91 N.M. 279, 282, 573 P.2d 213, 216 (1977) (stating that Article VI, Sections 3 and 13 of the New Mexico Constitution together grant concurrent jurisdiction in the Supreme Court and the district courts).

{22}    The Commission asserts that there were technical errors in the form and presentation of Farms' petition and in the peremptory and permanent writs. It complains that neither of the writs contained any recitation of the facts in support of the writs, as required under Section 44-2-6, which states that "[t]he alternative writ shall state concisely the facts showing the obligation of the defendant to perform the act, and his omission to perform it[.]" It also complains that, while the peremptory writ refers to the petition and states that it is attached as required under Rule 1-065(E), the petition was not attached to the writ, that Rule 1-065(E) has nothing to do with the remedy of mandamus, and that even if the petition had been attached to the writ, it would have been insufficient to establish the facts required to support issuance of a writ under Section 44-2-6. *See Mora County Bd. of Educ. v. Valdez*, 61 N.M. 361, 365, 300 P.2d 943, 945 (1956) (stating that "allegations of fact in an application for [an alternative] writ form no part of the writ and ordinarily cannot be so considered in determining the legal sufficiency of the writ"). The Commission thus argues that the permanent writ is fatally deficient. In the district court, the Commission argued that the peremptory writ should be quashed because it did not contain "facts showing the obligation of the [Commission] to perform the act," as required in Section 44-2-6.

{23}    "[A]llegations in [an alternative] writ should be made as in ordinary actions. Hence, the usual rules applicable in testing the sufficiency of a complaint in an ordinary civil action apply." *Mora County Bd. of Educ.*, 61 N.M. at 365, 300 P.2d at 945. In the present case, the peremptory writ stated only that the Commission was:

    1.    [To] [c]omply with the mandatory non-discretionary duty to refrain from making any findings, decisions, or orders as to whether the [d]eeds and [c]ontract between [Farms] . . . and [American] . . . are void.

8

2.     . . . [P]rohibited from making any finding, decision, or order about the validity, interpretation, enforceability, performance, or breaches of the [c]ontract and [d]eeds between [Farms] and [American].

3.     [To] [r]eimburse [Farms'] costs for bringing this action.

The writ also stated that "[a] copy of [Farms'] [v]erified [p]etition for [i]ssuance of [p]eremptory [w]rit of [m]andamus, which is part of its [a]mended [c]omplaint against [American] is attached to this [w]rit as required by Rule 1-065[(E)]." The district court heard argument on the issues raised by Farms and subsequently issued a letter decision on the issuance of the peremptory writ. This letter decision does not mention the Commission's contention that the peremptory writ was legally insufficient, and the Commission does not indicate in its briefs on appeal the extent to which the issue was argued in the district court.

{24}     For several reasons, we do not see how the Commission can complain. Although it stated it was not waiving its right to assert that the writ was defective, the Commission answered both the peremptory writ and the petition while at the same time seeking to quash the writ and dismiss the petition. The Commission fully argued the merits of the issues of jurisdiction and administrative remedies. The Commission does not show why we should not construe this full-scale response as a waiver of a claim that the writ was defective. *See Mimbres Valley Irrigation Co. v. Salopek*, 2006-NMCA-093, ¶¶ 14-15, 140 N.M. 168, 140 P.3d 1117 (stating that where a party answers the allegations of a writ that is deficient in factual statements, the party waives the defect). Further, the Commission had the opportunity to ask the court to revisit the facts and decision before issuance of the permanent writ on December 27, 2007, but appears not to have taken that opportunity. Also, there is every indication that the Commission had adequate notice of the grounds for the writ, which were essentially legal rather than factual. The hearing examiner had set out the background in her recommended decision to the Commission. In issuing its order, the Commission itself relied on what it considered to be a significant observation of the hearing examiner that explained why prior approval of the sale was necessary. In addition, no rule requires a permanent writ that follows an alternative writ to contain the recitation of facts required in Section 44-2-6. We hold that the Commission cannot successfully attack the permanent writ for legal insufficiency.

**Whether the Writs Were Fatally Defective Because of the Existence of Other Adequate Remedies**

{25}     The Commission points out that NMSA 1978, Section 44-2-5 (1884) states that "[t]he writ shall not issue in any case where there is a plain, speedy[,] and adequate remedy in the ordinary course of law." To show such a remedy, the Commission cites the Public Utility Act, NMSA 1978, §§ 62-3-1 to -5 (1967, as amended through 2009), for the availability of a full administrative hearing on "any relevant issues [Farms] might wish to raise" and allowing Farms the opportunity to request a rehearing. The Commission points out that such a hearing was already in progress when Farms first appeared before the Commission. The Commission also cites NMSA 1978, Sections 62-11-1 to -6 (1941, as amended through 2003), which provide for an appeal to the Supreme Court from a final order of the

Commission. It argues that the availability of an appeal is an adequate and timely remedy, citing *Birdo v. Rodriguez*, 84 N.M. 207, 209, 501 P.2d 195, 197 (1972), and *Montoya v. Blackhurst*, 84 N.M. 91, 92, 500 P.2d 176, 177 (1972).

**{26}** Farms, of course, takes issue with the Commission's adequate-remedy argument because, as acknowledged by the Commission, the Commission cannot adjudicate Farms' claims against American since by the Commission's own admission it has no jurisdiction over Farms and no authority to award damages or provide other remedies on Farms' claims. Therefore, Farms argues, it is without an adequate remedy outside of the jurisdiction of the district court.

**{27}** The separate arguments of the parties have an air of two ships passing, unnoticed, in the silence of the night. The Commission's point centers on (1) the consequences if prior approval of the sale transaction was not obtained, and (2) that Farms must exhaust jurisdiction and authority as to that issue through the Commission proceeding, and then through its statutory right to appeal the Commission's final order directly to the Supreme Court. Farms' point is that the Commission has no jurisdiction to address the claims Farms raises in the civil action against American and, therefore, it is not possible for Farms to pursue those claims in the administrative proceeding or appeal from the Commission's final order. These arguments raise essential questions that have not been directly addressed by the parties and on which the record has not been adequately developed.

**{28}** Neither party adequately addresses what appears to be Farms' essential concerns if the Commission had exercised the jurisdiction it believes it has. In that event, the Commission could have determined that the sale of the property required but lacked prior approval and pronounce the sale void. This determination would then likely lead to a defense by American in a possible district court action that, based on the Commission's determinations, Farms was precluded from asserting its pending claims for relief against American relating to the sale transaction. If successful, the defense would foreclose some or all of the claims Farms was asserting in the action. Further, neither party adequately addresses the issues whether, once a determination is made that Section 62-6-12(A) was violated, Farms' claims asserted in the district court action can be relevant if all that remains is a ministerial act of declaring the sale transaction void and of no effect under Section 62-6-12(B), whether that is the act of the Commission or that of the court.

**{29}** In regard to the failure of Farms to appeal to the Supreme Court, under Section 62-11-1, the Commission's determination that it had jurisdiction, the Commission has not raised this specific point on appeal and does not appear to have raised this point in the district court. We therefore do not address it. In regard to the failure of Farms to pursue issues in the declaratory order proceeding that were pending before the Commission, we conclude that the question of adequate remedy is better addressed, if not necessarily subsumed, in the discussion that follows on the Commission's jurisdiction. A Commission determination under Sections 62-6-12(A) and (B) that the sale of the property violated Subsection (A)(4) and was void under Subsection (B) because it lacked prior approval cannot reasonably be separated from an analysis of the consequences, if any, flowing from that determination on

the viability of Farms' pending civil claims for relief against American in the district court action or of other claims Farms may have to pursue for relief.

**Whether the Commission Had Jurisdiction**

**{30}**    Generally, in addressing acts of a public utility, when there is a clear demarcation between acts concerning rights of private litigants and acts affecting the public interest, New Mexico case law precludes Commission authority over the former and affirms Commission authority over the latter. Our Supreme Court made this plain in *Southwestern Public Service Co. v. Artesia Alfalfa Growers' Ass'n*, 67 N.M. 108, 353 P.2d 62 (1960), when it stated:

> The power of the commission does not extend to acts of a utility not affecting its public duties; its jurisdiction is limited to matters or controversies wherein the rights of a utility and the public are involved. Its duties begin and end with conservation of the public interest, and are not concerned with individual rights of private litigants; and, ordinarily, it has no power to adjudicate purely private matters between a utility and an individual[.]

*Id.* at 117, 118, 353 P.2d at 68, 69 (internal quotation marks and citation omitted). Our decision in *Summit Properties* reiterates this dividing line of Commission authority. *See* 2005-NMCA-090, ¶¶ 10-11. It is important to note, however, that neither *Southwestern Public Service* nor *Summit Properties* involved application of Section 62-6-12.

**{31}**    Farms argues that, while the statute gives the Commission authority to grant or deny approval of sale transactions, and in the present case to determine whether American was required to get approval prior to the sale of the property, the Commission's jurisdiction was limited to this approval process and the Commission had no jurisdiction or authority after the sale transaction was consummated to declare contracts and deeds void and then order disposition of the property.

**{32}**    Exercise of such power, Farms argues, not only affects the rights of private litigants it also infringes on the separation of powers by usurping judicial authority. *See Sandel*, 1999-NMSC-019, ¶ 12 (stating that a separation-of-powers conflict or infringement "occurs when an administrative agency goes beyond the existing New Mexico statutes or case law it is charged with administering and claims the authority to modify this existing law or to create new law on its own").

**{33}**    We start with the notion that the Commission has "considerable discretion in determining the justness and reasonableness of utility rates." *Id.* ¶ 15 (internal quotation marks and citation omitted). That discretion is not boundless; still, although courts may "afford a degree of deference to an agency's interpretation of a statute the agency is charged with administering, such deference does not give the [Commission] the authority to pour any meaning it desires into the statute." *Id.* ¶¶ 16, 17 (internal quotation marks and citations omitted). "[S]tatutory construction itself is not a matter within the purview of the Commission's expertise[.]" *N.M. Indus. Energy Consumers*, 2007-NMSC-053, ¶ 19. As did our Supreme Court in *Sandel*, we view the statute "in its entirety and with a focus on its end

11

result," to determine if it is apparent that the Commission has done something outside of its authority.  1999-NMSC-019, ¶ 19.

**{34}**   The critical question in the present case is whether the Commission's interpretation of its jurisdiction and statutory authority is correct within the general guidelines set out in our Supreme Court's decisions.  Farms acknowledges that the Commission has the jurisdiction and statutory authority to determine if American was required to obtain Commission approval before the sale of the property, albeit for purposes other than to declare the sale transaction void.  Farms notes that the court "carefully crafted the [w]rit . . . to permit the [Commission] to carry out its duties" in that regard and that the writ only followed *Summit Properties* in prohibiting the Commission from determining the validity, interpretation, enforceability, or breach of the contract and whether the deeds are void.  Farms states that "[t]he [w]rit . . . allows the [Commission] to determine if [American] was required to get its approval before the sale, but prohibits the [Commission] from concluding that the deeds and the contract are void."

**{35}**   Farms has not asserted that the court erred in stating in the writ that "[t]his [w]rit is limited in scope, and the authority of the [Commission] to make a determination as to whether [American] should have obtained approval is not affected by this [w]rit."  Section 62-6-12(A) delegates to the Commission the responsibility and authority to make the prior-approval determination.  *See also* NMSA 1978, § 8-8-4(A) (1998) (directing that "[t]he [C]ommission shall administer and enforce the laws with which it is charged and has every power conferred by law").  Insofar as Farms wants to limit the Commission's authority to approve a sale after it has been consummated by applying the approval only for the purpose of assessing a penalty against American, we agree with the Commission that to limit approval in that manner is essentially to render the pre-approval requirement in the statute and the consequence in Subsection (B) relatively meaningless.  Thus, the question becomes, does Section 62-6-12(B) give the Commission jurisdiction and authority to determine or declare that lack of a required prior approval automatically renders an unapproved sale transaction void.

**{36}**   The conundrum that Farms' concession and court ruling creates for Farms is that once a determination is made by the Commission that approval of the sale transaction was required but not obtained before the sale was consummated, Subsection (B) of the statute appears to be a legislative declaration that the sale is automatically void.  For Farms to cede to the Commission the jurisdiction and authority to decide that the sale transaction in this case required, but did not have, prior approval, opens the door to an interpretation that what is left, if anything, is only a ministerial act required under statutory mandate of declaring the sale of the property void.  Farms has not contended that Subsection (B) is unconstitutional or that the Legislature intended its declaration to be debatable.

**{37}**   Indeed, the Commission not only argues that it can, if not must, take that ministerial step, it argues that it need not even take any step to declare as void a transaction that violates Section 62-6-12(A).  In the Commission's view, the writ is moot because "[t]he terms of [Section] 62-6-12[(B)] render transactions in violation of [Section] 62-6-12[(A)] void by operation of law—no action of the Commission is required by the statute."  To drive this

12

home, the Commission states its argument this way: "Viz., a transaction entered into without prior approval of the Commission in violation of [Section] 62-6-12[(A)] **is void** . . . without any further proceedings required to accomplish this—no hearing is required, no submissions or motions must be filed, no predicate must be established, no evidence presented to establish the fact, and arguably no finding by the Commission is necessary."

{38}    We have little doubt that if the Commission were to be prohibited from determining whether the sale required prior approval, American would assert the Section 62-6-12(A) prior-approval requirement as an affirmative defense in the pending district court action, and the court would likely have to hear and decide the prior-approval issue before getting to the merits of Farms' claims against American. Yet this is precisely the factual issue that the Commission has jurisdiction and authority to determine and will have to wrestle with in the administrative proceeding. On that specific issue, namely, who decides whether the sale required prior approval, the Commission has exclusive jurisdiction, not only because of the legislative direction in Section 62-6-12(A), backed up by the Commission's constitutional status and Section 8-8-4(A), but also because the Commission has the particular expertise in its regulatory capacity and duty to decide this factual issue.

{39}    Nevertheless, whether it is the district court or the Commission that decides the threshold prior-approval issue, the obvious next step is a determination of whether the sale transaction is void and of no effect under Section 62-6-12(B). The issues as to district court or Commission jurisdiction and action concerning whether the sale is void are, however, premature and not ripe for our review. *Cf. State ex rel. Stratton v. Roswell Indep. Sch.*, 111 N.M. 495, 507, 806 P.2d 1085, 1097 (Ct. App. 1991) (requiring the question posed to the appellate court to be real and not theoretical and stating that the district court's jurisdiction in a declaratory action is limited to cases of actual controversy). A case presents an actual controversy "if the question posed to the court is real and not theoretical, the person raising it has a real interest in the question, and there is another person having a real interest in the question who may oppose the declaration sought." *Id.* The threshold issue that must first be decided is whether the sale of the property required prior approval. That has not to our knowledge been decided. The Commission may determine that the sale transaction did not require prior approval. This Court at this time does not need to address the issues of jurisdiction and action concerning whether the sale is void or valid.

{40}    Furthermore, Farms was allowed to intervene in the Commission proceeding and therefore has the opportunity to present a case that the sale transaction did not require prior approval. If the Commission were to determine that the sale required prior approval, Farms then, upon a final order, has a statutory right to appeal that determination to the Supreme Court under Section 62-11-1.

{41}    Farms presumably disagrees with this analysis because, as it argued in oral argument before this Court, it should not be forced to participate in a Commission proceeding adjudicating the merits of the prior-approval issue in order to protect its interests. Under the circumstances in this case, we must reject Farms' argument. On the factual issue of prior approval, which calls for the expertise of the Commission, we are not persuaded that Farms cannot receive a fair hearing should Farms choose to appear on that issue. Such an

13

administrative hearing to resolve factual issues under a statutory directive is common in administrative law. Farms has provided no reason for us to deprive the Commission of its administrative authority, as long as the administrative proceeding in which Farms is allowed to participate as an interested party is conducted fairly and in a manner that gives Farms the opportunity to present evidence, authority, and argument.

**{42}**     We realize that our decision on ripeness and adequacy of the record and argument may leave the district court, the Commission, Farms, and American still somewhat in limbo as to the consequences flowing from any Commission determination that the sale required prior approval. However, even if we were to assume that the Commission will determine that the sale required prior approval pursuant to Section 62-6-12(A), and to further assume that the determination is not appealed or, if appealed, is affirmed, the record before us is simply inadequate for us to get to the bottom of lingering questions. We are not prepared today to say what, if any, consequences flow from those determinations. For example, is there any basis on which Farms could resist or has a right to preclude a declaration pursuant to Section 62-6-12(B) that the sale is void? What preclusive effect, if any, will such determinations have on Farms' pending and possible claims for relief? Will it make any difference whether it is the Commission or the court that addresses whether the sale is void or valid? Whichever makes the declaration, to what extent, if any, will Farms remain free to pursue remedies it may have against American that are not precluded because the sale is deemed void?

**{43}**     We thus prefer not to address whether the sale is void without a more adequate record. For the meantime, we do not consider the district court's permanent writ to be a final order. The writ should remain in effect, but should be treated as a temporary writ, pending a Commission determination of whether the sale required prior approval, and until further consideration of issues by the district court, any appeal to or further decision of this Court, or any appeal to or decision of the Supreme Court.

**CONCLUSION**

**{44}**     We remand for further proceedings consistent with this opinion.

**{45}    IT IS SO ORDERED.**

_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____
**CELIA FOY CASTILLO, Judge**

_____
**LINDA M. VANZI, Judge**

14

**Topic Index for** *OS Farms, Inc. v. New Mexico American Water Company, Inc.*, **No. 28,353**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-SR | Standard of Review |
| | |
| **CS** | **CORPORATIONS** |
| CS-PC | Public Regulatory Commission |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-RP | Ripeness |
| | |
| **GV** | **GOVERNMENT** |
| GV-WS | Water and Waste Systems |
| | |
| **JD** | **JURISDICTION** |
| JD-SM | Subject Matter |
| | |
| **PU** | **PUBLIC UTILITIES AND COMMUNICATIONS** |
| PU-PU | Public Utilities, General |
| PU-RM | Rate Making |
| PU-RU | Rule Making |
| | |
| **JD** | **JURISDICTION** |
| JD-SM | Subject Matter |
| | |
| **RE** | **REMEDIES** |
| RE-WM | Writ of Mandamus |