This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**WALTER GOULD,**

Plaintiff-Appellee,

v.                                                        **NO. 32,493**

**PENNIE GOULD,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF RIO ARRIBA COUNTY**
**Sheri A. Raphaelson, District Judge**

Jane B. Yohalem
Santa Fe, NM

for Appellee

Pamela Emsden
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**ZAMORA, Judge.**

{1}     Pennie Gould (Defendant) appeals from a district court judgment in favor of

Walter Gould (Plaintiff) for unpaid rent, a utility bill, damages, and attorney fees

pursuant to the New Mexico Uniform Owner-Resident Relations Act (the Act), NMSA 1978, §§ 47-8-1 to -52 (1975, as amended through 2007). We consider whether the parties' conduct and their agreement relating to family business and accommodations is one governed by or enforceable under the provisions of the Act. We conclude that the Act does not apply under the circumstances of this case and reverse.

## I.    BACKGROUND

{2}    Plaintiff is in the business of owning and renting residential and storage properties. Defendant and Jay Gould (Husband) lived at the residence currently in dispute (the residence), located in Espanola, during their marriage. Plaintiff, Husband's father, owns the residence. Defendant and Husband have two children, and Plaintiff is their grandfather. Defendant and Husband divorced in 2005 and entered into a marital settlement agreement (the MSA). The MSA provided in relevant part that Defendant could have "use and possession" of the residence for three years from the date of entry of the final decree. Under the MSA, if Defendant was asked to vacate the residence, then Husband was required to pay her $700 per month in spousal support for the remainder of the three-year period. If Defendant vacated the premises of her own accord prior to the end of the three-year period, then Husband would not

be required to pay the $700 per month. The MSA is silent on any requirement that Defendant pay rent to Plaintiff in exchange for living in the residence for the three years.

{3} Defendant lived at the residence with the children rent-free for the three years provided for in the MSA. Defendant testified that she asked Plaintiff if she could stay longer than the three years and that Plaintiff said she could stay until she "could get back on her feet." Defendant also testified that she took that to mean that she could continue to live at the residence rent-free. Defendant moved out of the residence about thirteen months after the three-year term set forth in the MSA.

{4} The residence is about 200 yards from Plaintiff's office, Defendant saw Plaintiff on a regular basis, and Defendant went to Plaintiff's office to collect Husband's child support payments. While Defendant lived in the residence for thirteen months after the three years provided for in the MSA, Plaintiff and Defendant never discussed payment of rent or entering into a lease for the residence. Defendant testified that Plaintiff never discussed her paying rent for living in the residence for the extra thirteen months, nor did Plaintiff or Plaintiff's property manager ever seek to collect rent from Defendant during the thirteen months she resided there after the three-year period. Plaintiff testified that there was no "direct" rental agreement between

3

Defendant and him for the residence, and did not offer any other testimony that conflicted with Defendant's testimony on these matters.

**{5}** After Defendant moved out, she met with the New Mexico Child Support Enforcement Division (CSED) to discuss having Husband's child support payments automatically deposited into her account because she had a new job in Los Alamos and was moving there. About two months after Defendant moved out of the residence, CSED sent Husband a letter about child support arrearages. Soon thereafter, Defendant received notice from Plaintiff for nonpayment of rent liability under the Act. Plaintiff petitioned the magistrate court for restitution pursuant to the Act. A trial in magistrate court resulted in a judgment in favor of Plaintiff. Defendant appealed to the district court. The district court held a bench trial (de novo) and entered a judgment in favor of Plaintiff.

**{6}** Defendant filed requested findings of fact and conclusions of law untimely, and Plaintiff did not submit any requested findings of fact or conclusions of law; therefore, the district court was not required by Rule 1-052 NMRA to enter written findings and conclusions. Accordingly, our review is based on the district court's oral ruling.

## II.    DISCUSSION

{7}    On appeal, Defendant challenges the district court's judgment in favor of Plaintiff, questioning the applicability of the Act to the circumstances of this case based on her assertion that there is no rental agreement between Plaintiff and her to which the Act applies.

### A.    Standard of Review

{8}    Whether the Act applies to the parties' arrangement in this case is a question of statutory interpretation, which we review de novo. *United Rentals Nw., Inc. v. Yearout Mech., Inc.*, 2010-NMSC-030, ¶ 7, 148 N.M. 426, 237 P.3d 728. "When construing statutes, our guiding principle is to determine and give effect to legislative intent." *OS Farms, Inc. v. N.M. Am. Water Co.*, 2009-NMCA-113, ¶ 19, 147 N.M. 221, 218 P.3d 1269 (internal quotation marks and citation omitted). To discern the Legislature's intent, we "look first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." *Marbob Energy Corp. v. N.M. Oil Conservation Comm'n*, 2009-NMSC-013, ¶ 9, 146 N.M. 24, 206 P.3d 135 (internal quotation marks and citation omitted). Statutory language that is clear and unambiguous must be given effect. *Trinosky v. Johnstone*, 2011-NMCA-045, ¶ 11, 149 N.M. 605, 252 P.3d 829.

**B.      Applicability of the Act**

{9}      The Act "applies to, regulates[,] and determines rights, obligations[,] and remedies [of owners and residents] *under a rental agreement* . . . for a [residence] located within this state." Section 47-8-8 (emphasis added). A "rental agreement," as defined by the Act, is an agreement "between an owner and resident . . . embodying the terms and conditions concerning the use and occupancy of a dwelling unit or premises[.]" Section 47-8-3(P).

{10}      The district court determined that the MSA, though not a written lease agreement between Plaintiff and Defendant, constituted a "rental agreement" under the Act, which set out the terms and conditions of occupancy. The district court found that Defendant properly occupied the residence for the three years set out in the MSA, in exchange for forgoing $700 in spousal support, and thereafter Defendant was a hold-over tenant.

{11}      The district court concluded the "rental agreement" between Plaintiff and Defendant was initially the written MSA and became a non-written agreement once Defendant held-over. Apparently relying on Section 47-8-15(A), the district court determined that as a hold-over tenant, Defendant was required to pay rent equal to the "fair market value." *See id.* ("In the absence of [a rental] agreement, the resident shall

6

pay as rent the fair rental value for the use of the premises and occupancy of the dwelling unit."). The district court calculated the fair rental value for the residence at $700 per month, pursuant to the MSA's paragraph on spousal support.

{12} Defendant argues that the district court erred in finding that the Act applied to the circumstances of this case because there was no express rental agreement between Plaintiff and her. Specifically, Defendant argues that the district court erred in construing the MSA as a rental agreement because Plaintiff was not a party to the agreement. We agree.

**1.      The MSA Is Not a Rental Agreement**

{13} Marriage is a civil contract between spouses. NMSA 1978, § 40-1-1 (1915); *Merrill v. Davis*, 1983-NMSC-070, ¶ 10, 100 N.M. 552, 673 P.2d 1285. When spouses execute a marital settlement agreement during a divorce, that agreement is also a contract between the spouses. *Cortez v. Cortez*, 2009-NMSC-008, ¶ 1, 145 N.M. 642, 203 P.3d 857 ("Marital settlement agreements are contracts executed by divorcing spouses setting forth the present and future obligations of the parties."). As such, the rules of contract law generally apply to marital settlement agreements. *See Herrera v. Herrera*, 1999-NMCA-034, ¶ 9, 126 N.M. 705, 974 P.2d 675 (holding that marital settlement agreements are contracts, subject to contract law). It is a well settled

7

principle of contract law that "[o]ne who is not a party to a contract cannot maintain a suit upon it." *Bank of New York v. Romero*, 2014-NMSC-007, ¶ 17, 320 P.3d 1 (internal quotation marks and citation omitted).

{14}    In this case, Plaintiff was not a party to the marriage contract between Husband and Defendant, and likewise, he was not a party to the MSA. However, Plaintiff argues, that the terms of the MSA can be transferred to him because, in executing the MSA and agreeing to the terms and conditions for Defendant's occupancy of the residence, Husband was actually acting as Plaintiff's agent. We are not persuaded.

{15}    "'An agent is a person who, by agreement with another called the principal, represents the principal in dealings with third persons or transacts some other business, manages some affair or does some service for the principal, with or without compensation.'" *Madsen v. Scott*, 1999-NMSC-042, ¶ 8, 128 N.M. 255, 992 P.2d 268 (quoting UJI 13-401 NMRA). The agency relationship "may be either expressed or implied by a course of conduct showing an intention that the relationship exists." UJI 13-401. Where, as here, no express agency agreement has been introduced, proof of such a relationship can be found by examining the conduct of the parties. *See Bozza v. Gen. Adjustment Bureau*, 1985-NMCA-068, ¶ 13, 103 N.M. 200, 704 P.2d 454 ("Whether an agency exists is ordinarily a question of fact which may be established

8

by direct or circumstantial evidence."); *see also State v. DeBaca*, 1971-NMCA-092, ¶ 9, 82 N.M. 727, 487 P.2d 155 (stating that proof of implied agency "is generally found in the acts and conduct of the parties as distinguished from the introduction of a contract, written or oral, establishing the relationship").

{16} The legal relationship of agency can be created where "the principal has in some manner indicated that the agent is to act for him, and that the agent so acts or agrees to act on his behalf and subject to his control." *Totah Drilling Co. v. Abraham*, 1958-NMSC-102, ¶ 19, 64 N.M. 380, 328 P.2d 1083. A principal can vest his agent with actual or apparent authority. *Romero v. Mervyn's*, 1989-NMSC-081, ¶¶ 11-12, 109 N.M. 249, 784 P.2d 992. "[A]ctual authority is determined in light of the principal's manifestations of consent to the agent, [and] apparent authority arises from the principal's manifestations to [a] third part[y.]" *Id.* ¶ 12 (internal quotation marks and citation omitted). The existence of an agent's authority is based on "words or acts of the principal, and not the representations or acts of the agent." *Tercero v. Roman Catholic Diocese*, 2002-NMSC-018, ¶ 12, 132 N.M. 312, 48 P.3d 50 (internal quotation marks and citation omitted).

{17} Plaintiff contends that his conduct manifested his intention that Husband act as his agent in two ways: (1) Plaintiff allowed his son to reside in and control the

residence for many years, and (2) Plaintiff acted in conformance with the MSA for the three-year term set forth in the MSA. However, this conduct is insufficient to demonstrate that, at the time Husband executed the MSA, he did so as Plaintiff's agent, creating a rental agreement between Plaintiff and Defendant. To the contrary, our review of the record reveals that the MSA is an express agreement between Husband and Defendant which makes no mention of Plaintiff nor indicates the existence of an agency relationship or obligation to Plaintiff. Moreover, the record does not reveal any specific words or acts by Plaintiff that would demonstrate an intention to create an agency relationship.

{18}     Because Plaintiff was not a party to the MSA, and agency principles cannot be used to transfer the terms of the MSA to Plaintiff, we conclude that the district court erred in construing the MSA as a rental agreement and that the arrangement between the parties is not a "rental agreement" as defined by Section 47-8-3(P) of the Act. As a result, we hold that the Act does not apply to the circumstances of this case, and we reverse the district court's judgment awarding Plaintiff unpaid rent, damages, unpaid utilities, and attorney fees pursuant to the Act.

10

## 2. The District Court's Equitable Ruling

{19} The district court, sua sponte, raised the issue of equity. Based on its ruling regarding the MSA as a rental agreement and relying on Section 47-8-4 of the Act, which states that "[u]nless displaced by the provisions of the . . . Act, the principles of law and equity . . . supplement its provisions," the court did not find Defendant's testimony regarding an express oral agreement for rent-free occupancy credible and concluded that equity demanded payment of rent in the amount of $700 per month for the thirteen-month "hold-over period." To the extent that the district court's ruling related to equity was made pursuant to and in the context of the Act, we have held that the Act does not apply here and we reverse the court's equitable ruling on that basis.

{20} To the extent that Plaintiff argues that an equitable ruling by the district court, outside the context of the Act, should stand, we disagree. A district court has "broad discretion" and "great flexibility" in its decisions regarding equitable remedies. *See In re Estate of Duran*, 2003-NMSC-008, ¶ 35, 133 N.M. 553, 66 P.3d 326. However, "[s]uch discretion is not a mental discretion to be exercised as one pleases, but is a legal discretion to be exercised in conformity with the law." *Cont'l Potash, Inc. v. Freeport-McMoran, Inc.*, 1993-NMSC-039, ¶ 26, 115 N.M. 690, 858 P.2d 66, *holding limited on other grounds by Davis v. Devon Energy Corp.*, 2009-NMSC-048, ¶¶ 34-

35, 147 N.M. 157, 218 P.3d 75. "Generally, the [district] court may not grant judgment for relief which is neither requested by the pleadings nor within the theory on which the case was tried." *Credit Inst. v. Veterinary Nutrition Corp.*, 2003-NMCA-010, ¶ 19, 133 N.M. 248, 62 P.3d 339 (internal quotation marks and citation omitted). "The theory of pleadings is to give the parties fair notice of the claims and defenses against them, and the grounds upon which they are based." *Schmitz v. Smentowski*, 1990-NMSC-002, ¶ 9, 109 N.M. 386, 785 P.2d 726.

**{21}** Here, Plaintiff did not request equitable relief in his complaint, did not argue equity at trial, and did not seek to amend his complaint to conform to the evidence. Based on our review of the record, equity did not come up until closing arguments before the district court. As a result, the facts, as alleged in the pleadings and as presented at trial did not put Defendant on notice that equitable theories were included in those alleged. For these reasons, we cannot affirm the district court's ruling related to equity.

**III.    CONCLUSION**

**{22}** Based on the forgoing, we reverse the judgment of the district court.

12

**{23}** **IT IS SO ORDERED.**

_____
**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**LINDA M. VANZI, Judge**