**Certiorari Granted, December 19, 2014, No. 34,940**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2015-NMCA-002**

**Filing Date: September 23, 2014**

**Docket No. 32,709**

**STATE OF NEW MEXICO,**

> **Plaintiff-Appellee,**

**v.**

**GUADALUPE FLORES,**

> **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Stephen K. Quinn, District Judge**

Gary K. King, Attorney General
Corinna Laszlo-Henry, Assistant Attorney General
Santa Fe, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Will O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**ZAMORA, Judge.**

**{1}** Guadalupe Flores (Defendant) appeals her convictions for murder in the second degree, three counts of aggravated battery with a deadly weapon, and one count of aggravated battery on a household member. Defendant contends that systematic removal of Spanish-only speaking jurors from the jury panels from which her jury was chosen violated her right to a fair and impartial jury. Defendant also claims that the district court abused its

discretion by failing to sever the charges, which stemmed from two separate incidents. We conclude that Defendant failed to establish a prima facie case of systematic exclusion of Spanish-only speakers from jury panels. We further conclude that the district court did not abuse its discretion in denying Defendant's motion to sever. Accordingly, we affirm.

**BACKGROUND**

**{2}**     Defendant and Anthony Mah (Mah) were romantically involved, lived together, and had four children together. The charges against Defendant stemmed from two separate incidents involving Defendant and Mah; one occurred in February 2011, and the other in November 2011.

**{3}**     On February 12, 2011, Defendant went looking for Mah, who was out. Defendant found Mah sitting in his parked vehicle outside a residence with a female passenger. Defendant was upset. Witnesses reported seeing Defendant drive her vehicle into the back of Mah's vehicle several times. Defendant later told police that she had run into Mah's car because he was with another woman. Defendant was charged with aggravated battery on a household member.

**{4}**     Defendant and Mah continued their relationship. On November 1, 2011, Mah was driving around with a friend, Brandon Vann (Vann), and three female passengers. Defendant spotted the group and approached their vehicle. When Mah noticed Defendant, he drove away and Defendant followed in her vehicle. Defendant pursued Mah and rear-ended the vehicle he was driving multiple times. Eventually, as Mah began to pull to the side of the road, Defendant hit the vehicle from the side, and the vehicle flipped several times. Vann was pronounced dead at the scene. Following the crash, Defendant was charged with one count of second degree murder and four counts of aggravated battery with a deadly weapon.

**{5}**     The charges against Defendant from the February incident and the November incident were joined. Prior to trial Defendant moved to sever the charges. The motion was denied and the matters were tried jointly. Defendant was convicted of all charges.

**{6}**     Defendant moved for a new trial after learning that all prospective jurors who spoke Spanish only and required an interpreter were systematically excluded from the jury panels from which her trial jury was selected. The district court held a hearing on the issue. The court clerk responsible for selecting jury panels testified at the hearing. The clerk testified that in creating jury panels, she put all Spanish-only speaking prospective jurors on one panel in order to minimize the cost of interpreters. In this case, the jury pool was comprised of approximately one thousand prospective jurors. The clerk divided them into five panels and assigned all Spanish-only speakers to panel three. Defendant's jury was selected from panels one and two. In her motion for a new trial, Defendant claimed that the clerk's practice deprived her of a fair and impartial jury. The motion was denied. This appeal followed.

**DISCUSSION**

**A.      Systematic Exclusion of Prospective Jurors**

**1.      Preservation**

**{7}**      The State argues that Defendant failed to preserve her objection to the composition of the jury venire because she failed to alert the district court to the basis of her claim with the requisite specificity to satisfy preservation requirements. We disagree.

**{8}**      Rule 12-216 NMRA provides that a question is preserved for appellate review if it "appear[s] that a ruling or decision by the district court was fairly invoked . . . [and f]urther, if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice the party."

> The primary purposes of the preservation requirements are: (1) to specifically alert the district court to a claim of error so that the error may be corrected at that time, (2) to allow the opposing party adequate opportunity to respond to a claim of error, and (3) to create a sufficient record to allow this Court to make an informed decision regarding the contested issue.

*State v. Moncayo*, 2012-NMCA-066, ¶ 5, 284 P.3d 423.

**{9}**      In this case, Defendant was not aware of the clerk's jury panel selection procedures until after her trial. Once Defendant became aware that Spanish-only speaking prospective jurors were excluded from the two jury panels from which her jury was selected, she moved for a new trial. The State responded, and the district court held a hearing on the motion. At the hearing, the court clerk testified regarding her jury panel selection process. After hearing the testimony and arguments from the parties, the district court ruled on the merits of the motion. Because the district court was alerted to Defendant's claim of error and had a sufficient opportunity to fully address it, the issue was sufficiently preserved for our review.

**2.      Waiver Pursuant to NMSA 1978, § 38-5-16 (1969)**

**{10}**      The State also argues that because Defendant did not object to the jury venire composition prior to the empaneling of the jury, Defendant waived her right to object under Section 38-5-16. We are not persuaded.

**{11}**      Determining whether Section 38-5-16 bars Defendant's objection to the clerk's jury selection process even though Defendant was not aware of the procedure until after her trial is an issue of statutory interpretation. Accordingly, our review is de novo. *United Rentals Nw., Inc. v. Yearout Mech., Inc.*, 2010-NMSC-030, ¶ 7, 148 N.M. 426, 237 P.3d 728. The guiding principle when construing statutes is to "determine and give effect to legislative intent." *OS Farms, Inc. v. N.M. Am. Water Co.*, 2009-NMCA-113, ¶ 19, 147 N.M. 221, 218 P.3d 1269 (internal quotation marks and citation omitted). To discern the Legislature's intent, "we look first to the plain language of the statute, giving the words their ordinary

3

meaning, unless the Legislature indicates a different one was intended." *Marbob Energy Corp. v. N.M. Oil Conservation Comm'n*, 2009-NMSC-013, ¶ 9, 146 N.M. 24, 206 P.3d 135 (alteration, internal quotation marks, and citation omitted). Statutory language that is clear and unambiguous must be given effect. *Trinosky v. Johnstone*, 2011-NMCA-045, ¶ 11, 149 N.M. 605, 252 P.3d 829.

**{12}**     Section 38-5-16 states, in pertinent part, that a criminal defendant "may challenge the jury panel on the ground that the members thereof were not selected substantially in accordance with law. . . . Such a challenge is waived if not raised before the trial jury panel has been sworn and selection of the trial jury commenced." By definition, waiver is "[t]he voluntary relinquishment or abandonment . . . of a legal right or advantage[.]" Black's Law Dictionary 1717 (9th ed. 2009). "The party alleged to have waived a right must have had both knowledge of the existing right and the intention of forgoing it." *Id.*

**{13}**     In this case, Defendant was not aware of the clerk's policy to segregate Spanish-only speaking prospective jurors at the time her jury was being empaneled. She could not have objected to the procedure in accordance with Section 38-5-16 because she did not know that her objection was warranted until after her trial. We do not believe that the Legislature intended for Section 38-5-16 to bar objections to unlawful jury selection where a party does not know the selection process has been unlawful prior to swearing in the prospective jury panel and jury selection has been commenced. We decline to apply the statute in that way. *See State v. Stevens*, 2014-NMSC-011, ¶ 15, 323 P.3d 901 ("It is the high duty and responsibility of the judicial branch of government to facilitate and promote the [L]egislature's accomplishment of its purpose. Although we look first to the language of the statute, we will reject a formalistic and mechanical statutory construction when the results would be absurd, unreasonable, or contrary to the spirit of the statute." (internal quotation marks and citation omitted)). Accordingly, we conclude that Defendant did not waive her right to object to the composition of the jury venire.

### 3.     Representative Cross-Section of the Community

**{14}**     We turn now to Defendant's claim that she was deprived of a fair and impartial jury as a result of the systematic exclusion of Spanish-only speakers from the majority of jury panels in Curry County. Article II, Section 14 of the New Mexico Constitution entitles criminal defendants to a "trial by an impartial jury," which requires that the jury represent a "fair cross[-]section of the community." *State v. Aragon*, 1989-NMSC-077, ¶¶ 5, 25, 109 N.M. 197, 784 P.2d 16. Defendant relies heavily on *Aragon* to support her contention that the systematic exclusion of Spanish-only speakers from jury panels is unconstitutional.

**{15}**     However, Defendant's reliance on *Aragon* is misplaced. *Aragon* involved a constitutional challenge to a prosecutor's purposeful, discriminatory, and systematic exercise of peremptory strikes to exclude members of a cognizable racial group from the jury panel. *Id.* ¶¶ 9, 15-16. This type of alleged violation requires an examination of the prosecutor's conduct, and inferences that can be made about the prosecutor's discriminatory intent. *Id.*

4

¶ 17 ("[T]he party may show that [the prosecutor] has struck most or all of the members of the identified group from the venire, or has used a disproportionate number of peremptories against the group. He may also demonstrate that the jurors in question share only this one characteristic—their membership in the group—[or] . . . the failure of [the prosecutor] to engage the same jurors in more than desultory voir dire, or indeed to ask them any questions at all." (internal quotation marks and citation omitted)).

**{16}** This type of analysis is distinguishable from the analysis we apply to claims that the jury selection process as a whole has resulted in systematic exclusion of a particular group. This Court has adopted a two-step test for determining whether there was a violation of a defendant's constitutional right to a jury selected from a fair cross-section of the community from the United States Supreme Court, *Duren v. Missouri*, 439 U.S. 357 (1979). First, the defendant must establish whether there was a prima facie violation of the fair cross-section requirement.

> [T]o show a prima facie violation of the fair cross-section requirement, a defendant must demonstrate that (1) the group alleged to be excluded is a 'distinctive' group in the community, (2) the group's representation in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community, and (3) this under-representation results from the systematic exclusion of the group in the jury-selection process.

*State v. Casillas*, 2009-NMCA-034, ¶ 13, 145 N.M. 783, 205 P.3d 830 (citing *Duren*, 439 U.S. 357, 364). If there was a prima facie violation, the second part of the test provides the government an opportunity to defend its practices by demonstrating that a significant state interest is advanced by the process that results in the exclusion of a distinctive group. *Duren* at 367-68.

**{17}** Here, Defendant relies primarily on authority related to prosecutorial discrimination, and does not address the *Duren* test. As a result, Defendant has not fully developed her argument regarding a prima facie violation of the fair cross-section requirement. This Court will not rule on an inadequately-briefed issue where doing so would require this Court "to develop the arguments itself, effectively performing the parties' work for them." *Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53, *cert. denied,* 134 S. Ct. 1787 (2014); *see id.* ("[W]e are not required to do their research. . . . This creates a strain on judicial resources and a substantial risk of error. It is of no benefit either to the parties or to future litigants for this Court to promulgate case law based on our own speculation rather than the parties' carefully considered arguments." (internal quotation marks and citation omitted)). Our Court has been clear that it is the responsibility of the parties to set forth their developed arguments, it is not the court's responsibility to presume what they may have intended. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 M.M. 339, 110 P.3d 1076 (holding that this Court has no duty to review an argument that is not adequately developed or guess at what the argument might be); *see also In re Adoption of Doe*, 1984-

NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 (holding where a party cites no authority to support an argument, we may assume no such authority exists). To do otherwise is setting a very dangerous precedent. Moreover, for us to unilaterally develop Defendant's constitutional argument, and rule on that basis here, would deprive the State of an opportunity to advance any argument it may have regarding a significant state interest served by the challenged process. This would result in a substantial disadvantage to the State.

**{18}** The same disadvantage exists regarding Defendant's assertion that Article II, Section 14 of the New Mexico Constitution provides greater protection than the federal constitution. The dissent believes that Defendant has presented an argument that *Aragon* should be extended to prohibit the actions of a court official that result in all Spanish-only speakers being segregated. However, *Aragon*, only related to prosecutorial misconduct. The mere statement that the New Mexico Constitution provides greater protection does not articulate how the greater protection offered by Article II, Section 14 applies in this context and, therefore, provides no basis for response by the State. The dissent believes that the *Duren* test is "out of place" and should not apply, but if it does not, it is not clear what would apply. Although the principle of *Aragon* may conceivably be applicable, that, without more, is not argument. In sum, we conclude that Defendant has not met her burden and has failed to establish the systematic exclusion of Spanish-only speakers from the jury panels.

**{19}** The district court has an affirmative responsibility to empanel jurors in a random manner. NMSA 1978, § 38-5-11(A) (2005). Accordingly, it is important to stress that the Ninth Judicial District's court clerk's systematic policy of impermissibly manipulating the jury selection process is a miscarriage of that responsibility and borders on the egregious. By placing all Spanish-only speaking prospective jurors in one panel, the clerk has effectively excluded them from all of the other panels. This process can potentially violate both the prospective jurors' right to serve and the criminal defendant's right to a fair and impartial jury. *See State v. Samora*, 2013-NMSC-038, ¶ 7, 307 P.3d 328 ("This Court has recognized more than once that Article VII, Section 3 [of the New Mexico Constitution] unambiguously protects the rights of Spanish-only speakers to serve on our state juries."); *see also Aragon*, 1989-NMSC-077, ¶ 25 ("Article II, Section 14, [of the New Mexico Constitution] entitl[es the defendant] to a jury representing a fair cross[-]section of the community[.]").

**{20}** In this case, although the clerk's action is inexcusable, the record does not reveal whether Spanish-only speaking members of the jury pool were actually prevented from serving as a result of the clerk's policy. It is also unclear whether the policy resulted in trial juries that were not representative of the community.

**B.    Defendant's Motion to Sever Charges**

**{21}** Prior to trial, Defendant moved to sever the charge of aggravated battery on a household member related to the February incident from the charges of second-degree murder and four charges of aggravated battery with a deadly weapon related to the

November incident. The district court denied the motion to sever finding that the evidence would have been cross-admissible, that Defendant failed to show undue prejudice resulting from the joinder of charges, and that the evidence of the February incident was relevant to rebut Defendant's claim that the November crash was an accident. We review the denial of a motion to sever for an abuse of discretion. *State v. Lovett*, 2012-NMSC-036, ¶10, 286 P.3d 265.

**{22}** Defendant argues that the evidence of the aggravated battery on a household member would not be cross-admissible because it was improper evidence under Rule 11-404(B) NMRA. Defendant further argues that, even if the evidence were cross-admissible, it should have been kept out because the probative value was substantially outweighed by the danger of unfair prejudice under Rule 11-403 NMRA. The State contends that the evidence would be cross-admissible because it shows intent (that the collision between the two vehicles was not an accident), and because it was not more prejudicial than probative.

**{23}** Rule 5-203(A) NMRA requires the State to join certain charges if the offenses "(1) are of the same or similar character, even if not part of a single scheme or plan; or (2) are based on the same conduct or on a series of acts either connected together or constituting parts of a single scheme or plan." *State v. Gallegos*, 2007-NMSC-007, ¶¶ 10, 141 N.M. 185, 152 P.3d 828. However, "a [district] court may abuse its discretion in failing to sever charges" if there is prejudice to the accused. *Id.* ¶¶ 9, 16.

**{24}** In determining whether a district court's failure to sever resulted in prejudice to the defendant, we must first determine whether the evidence pertaining to each charge would be cross-admissible in separate trials. *Id.* ¶ 19 ("[T]here is a high risk of undue prejudice whenever joinder of counts allows evidence of other crimes to be introduced in a trial of charges with respect to which the evidence would otherwise be inadmissible. On the other hand, cross-admissibility of evidence dispels any inference of prejudice." (alterations, internal quotation marks, and citations omitted)).

**{25}** We determine cross-admissibility through an analysis of Rule 11-404(B). *See Lovett*, 2012-NMSC-036, ¶ 37; *Gallegos*, 2007-NMSC-007, ¶¶ 20-21. Rule 11-404(B)(1) states: "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Nonetheless, evidence of a crime, wrong, or other act may be used for another purpose, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Rule 11-404(B)(2). The district court may admit evidence of prior acts where such evidence is relevant to a material issue other than the defendant's character. *State v. Martinez*, 1999-NMSC-018, ¶ 30, 127 N.M. 207, 979 P.2d 718. However, the state must "identify and articulate the consequential fact to which the evidence is directed." *Gallegos*, 2007-NMSC-007, ¶ 22.

**{26}** Here, the evidence relevant to the charge of battery on a household member, arising from the February incident, would have been cross-admissible under Rule 11-404(B)(2). The

evidence of the first incident, during which Defendant purposefully ran her vehicle into Mah's vehicle after finding him in the company of another woman, could show that she purposefully collided with the vehicle Mah was driving in November, when she once again found him in the company of other women. This evidence does not necessarily imply that Defendant has the propensity or character to behave dangerously, which would be improper character evidence under Rule 11-404(B)(1). Rather, it is permissible under Rule 11-404(B)(2). We conclude that the district court did not abuse its discretion by denying Defendant's motion to sever.

**CONCLUSION**

**{27}**    For the foregoing reasons we affirm.

**{28}    IT IS SO ORDERED.**

_____

**M. MONICA ZAMORA, Judge**

**I CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

**LINDA M. VANZI, Judge, (dissenting).**

**VANZI, Judge (dissenting)**

**{29}**    Defendant has argued in the district court and on appeal that the systematic and complete exclusion of Spanish-only speakers from the panels from which her petit jury was drawn violated her right to a venire that represented a cross-section of the community. The jury clerk for the Ninth Judicial District testified that she intentionally manipulated the jury venire to ensure that all Spanish-only speakers were placed on a single separate panel in order to save the costs of hiring additional interpreters. This practice of segregating Spanish-speaking venire members potentially violates the sixth amendment to the United States Constitution, Article II, Section 14 of the New Mexico Constitution, and Section 38-5-11(A) ("The court shall empanel jurors in a random manner."). Given the nature of the rights at stake of both a prospective juror's right to serve and a criminal defendant's right to a fair and impartial jury, I cannot join in ¶¶ 14-19 of the majority's Opinion.

**{30}**    I am fully aware of the importance of ensuring that litigants adequately brief relevant issues on appeal. However, this concern should not prevent review of an alleged constitutional violation that the majority itself recognizes is a "miscarriage" of judicial responsibility that "borders on the egregious." Majority Op. ¶ 18. I also believe that Defendant's briefing is adequate. Defendant argues that Article II, Section 14 of the New

Mexico Constitution provides greater protection than its federal counterpart. Defendant cites *Aragon*, which adopted California's "Wheeler Doctrine," extending the state constitution's fair cross-section guarantee to prevent prosecutors from using racially discriminatory peremptory challenges at the impaneling stage. 1989-NMSC-077, ¶¶ 21-23; *see State v. Gonzales*, 1991-NMCA-007, ¶ 34, 111 N.M. 590, 808 P.2d 40 (holding that the same rationale applies to prevent discrimination on the basis of gender). In *Aragon*, our Supreme Court departed from federal cross-section precedent, reasoning that "the state should not be able to accomplish indirectly at the selection of the petit jury what it has not been able to accomplish directly at the selection of the venire." 1989-NMSC-077, ¶ 23. I interpret Defendant's argument as an invitation to extend this reasoning to Defendant's situation, where a court official rather than the State has intentionally manipulated the venire panels to totally exclude Spanish-only speakers from the actual jury.

{31}    I see no reason why we cannot consider Defendant's argument. I, like Defendant, find it difficult to distinguish between a prosecutor's exercise of peremptory challenges to exclude a particular group from the jury panel, and a court official's ability to unilaterally accomplish the same result. While the standards for measuring the discriminatory use of peremptory strikes may be of no use here, in my view, the majority's test adopted from *Duren* seems to be equally out of place.[1] Majority Op. ¶¶ 16-17.

{32}    The *Duren* approach focuses on underrepresentation, proven by statistically quantifiable disparity levels between the jury pool and the jury-eligible population, and is unconcerned with the makeup of the actual petit jury panel. *See Lockhart v. McCree*, 476 U.S. 162, 173 (1986). Requiring Defendant to prove that Spanish-only speakers, who are constitutionally protected in this state, constitute a distinctive group, and requiring Defendant to present census data and other statistical evidence to demonstrate that—at an inclusion rate of zero percent—they are systematically underrepresented, seems to me an exercise in futility that ignores the heart of the issue: Does Article II, Section 14 of the New Mexico Constitution allow a court official to remove all Spanish-only speakers from a jury panel, solely based on their language, when a prosecutor likely cannot?

{33}    Even if the *Duren* approach applies, I disagree with the majority's statement that applying the test and ruling on the issue would deprive the State of an opportunity to advance its interest in continued exclusion. The State articulated its interest in a written response and at a hearing on Defendant's motion for a new trial. I do not believe that economic concerns, leave alone unsubstantiated ones, can justify the Ninth Judicial District's practice of systematically stacking its jury panels—a practice that appears to remain in effect today. I respectfully dissent.

---

[1] I also note that we applied this test in *Casillas* only because the defendant in that case did not preserve an argument that the state constitution was violated. 2009-NMCA-034, ¶ 11. Defendant here has preserved her argument under Article II, Section 14 of the New Mexico Constitution.

_____
**LINDA M. VANZI, Judge**