This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-38375**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**ANTONIO GONZALES,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**James Waylon Counts, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**ATTREP, Judge.**

**{1}** Defendant Antonio Gonzales appeals his convictions for one count of criminal sexual penetration of a minor (child under thirteen), contrary to NMSA 1978, Section 30-9-11(D)(1) (2009), and four counts of criminal sexual contact of a minor, contrary to NMSA 1978, Section 30-9-13(C) (2003). Defendant claims several of the district court's rulings were erroneous and asserts prosecutorial misconduct and cumulative error. We affirm.

**DISCUSSION**

**{2}**     Defendant was convicted by a jury of committing various acts of sexual abuse against D.R., his niece, when she was eleven years old and living with him in Otero County. Because the parties are familiar with the factual and procedural background of this case and this is a memorandum opinion, we reserve discussion of specific facts as necessary to resolve the issues presented on appeal.

**{3}**     Defendant makes numerous arguments on appeal. First, Defendant challenges the district court's grant of the State's request to permit D.R. to testify by videotaped deposition, which was played at trial in lieu of direct testimony. Second, Defendant contends that the State's use of a video exhibit of Defendant recording D.R. undressing amounted to prosecutorial misconduct because the video was mislabeled as having no value when it was provided to the defense. Third, Defendant challenges certain evidence admitted at trial, including a video of D.R.'s safe house interview, as well as evidence of his sexual abuse of D.R. occurring before the charged acts in Valencia County and his medical marijuana use. Fourth, Defendant challenges the district court's denials of two requested jury instructions—an instruction pertaining to Defendant's unexplained absence from trial and the inclusion in the charging instructions of the county in which the crimes were alleged to have occurred. Finally, Defendant asserts cumulative error. We address each argument in turn.

## I.     Permitting the Videotaped Deposition in Lieu of Direct Testimony Was Not Error

**{4}**     We first address whether the district court erred in granting the State's request to permit D.R. to testify by videotaped deposition, in lieu of direct testimony. We perceive no error.

**{5}**     NMSA 1978, Section 30-9-17 (1978), and its corollary, Rule 5-504 NMRA, permit the district court, on motion, to order the taking of a videotaped deposition of a minor under the age of sixteen who is an alleged victim of criminal sexual penetration or criminal sexual contact "to protect [the minor] from the further trauma of in-court testimony." *State v. Vigil*, 1985-NMCA-103, ¶ 10, 103 N.M. 583, 711 P.2d 28. A court may grant such a motion only when the minor witness "may be unable to testify without suffering unreasonable and unnecessary mental or emotional harm." Rule 5-504(A). To ensure the district court has properly balanced the defendant's constitutional confrontation rights and the special need for protection of the minor witness, the district court must make particularized findings that the minor would be harmed by testifying at trial. *See State v. Fairweather*, 1993-NMSC-065, ¶ 29, 116 N.M. 456, 863 P.2d 1077; *State v. Benny E.*, 1990-NMCA-052, ¶¶ 4-5, 8-9, 110 N.M. 237, 794 P.2d 380. To withstand scrutiny on appeal, those findings must have sufficient evidentiary support. *See Vigil*, 1985-NMCA-103, ¶ 7.

**{6}**     Pursuant to Rule 5-504(A), the State filed a pretrial motion to take the videotaped deposition of D.R. The district court held a hearing on the motion, at which the State presented evidence from D.R.'s therapist, and granted the State's request. D.R.'s videotaped deposition then was conducted in accordance with the statutory and rule

requirements—i.e., the judge presided over the deposition, Defendant was present and represented by counsel, and D.R. was subject to cross-examination by defense counsel. *See* § 30-9-17(A), (B); Rule 5-504(A), (B).

**{7}** Defendant contends the district court erred in two regards: (1) the district court's findings in support of granting the motion were inadequate; and (2) the evidence of potential harm to D.R. was insufficient. We conclude both that the district court made sufficiently particularized findings and that the findings were supported by substantial evidence.

## A.      The District Court's Findings

**{8}** At the conclusion of the hearing on the State's motion, the district court granted the request and orally announced the basis for its ruling; the court later issued a written order memorializing its ruling. The written order included language generally tracking that of the rule: that D.R. "would not be able to testify without suffering unreasonable and unnecessary mental or emotional harm." The district court judge made materially the same statement at the hearing. Also at the hearing, the judge found that (1) D.R. was diagnosed with post-traumatic stress disorder (PTSD), reactive attachment disorder, and a mood disorder; (2) D.R. caused $35,000 in damage to her former residential treatment center upon learning she would have to testify in this matter; and (3) the staff at D.R.'s residential treatment center believed it was in her best interest not to testify at trial.

**{9}** Defendant argues these findings are inadequate because they are "sparse" and "generic"; "could apply to many children"; and "do not assist this Court in determining whether the video deposition was necessary." We are unpersuaded. In our view, the oral findings were not sparse, but rather consisted of three distinct considerations; and they were not generic, but rather included details, like D.R.'s diagnoses and her destructive behavior upon learning she would have to testify against Defendant. Contrary to Defendant's argument, both categories of information are particular to D.R. *See, e.g.*, *State v. Altgilbers*, 1989-NMCA-106, ¶ 20, 109 N.M. 453, 786 P.2d 680 (considering the district court's oral findings in reviewing its decision to permit videotaped deposition); *State v. Tafoya*, 1988-NMCA-082, ¶ 16, 108 N.M. 1, 765 P.2d 1183 (same). That the district court's findings as worded could apply to other children does not lessen their integrity. What matters is that the district court found these to be D.R.'s circumstances. Lastly, it is unclear how the findings might hinder our review—their very existence distinguishes this case from those in which this Court has been unable to review a district court's ruling. *See State v. Ruiz*, 2001-NMCA-097, ¶ 41, 131 N.M. 241, 34 P.3d 630 (deeming it error for the district court not to make findings in support of its conclusion that the potential harm outweighed the confrontation right); *Benny E.*, 1990-NMCA-052, ¶¶ 8, 9 (remanding for "particularized findings of special harm" to the minor witness where "[t]he record is absent of any individualized findings that the victim needed special protection").

**{10}** In sum, we conclude the district court's findings are adequate for our review.

**B.      Evidence Supporting the Findings**

**{11}**     We are likewise satisfied that the State presented substantial evidence to support the district court's finding that D.R. would suffer unreasonable and unnecessary mental or emotional harm were she made to testify at trial. *See* Rule 5-504(A). "We utilize the substantial evidence test to determine whether the evidence supports [a court's] finding or conclusion." *Vigil*, 1985-NMCA-103, ¶ 7. "[S]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]" *Id.*

**{12}**     The State presented evidence of D.R.'s poor mental and emotional health and the strong likelihood that testifying at trial would harm her further. The evidence came in the form of uncontroverted testimony by D.R.'s residential treatment center therapist, Alison Coburn, a licensed clinical social worker, who had been treating D.R. for about nine months. Ms. Coburn testified that D.R. was fourteen years old at the time and suffered from PTSD, reactive attachment disorder, and disruptive mood disregulation disorder. She further testified about D.R.'s past reaction to the prospect of testifying at Defendant's trial. In particular, upon D.R. learning she would have to testify, she ran away from her previous residential treatment center; and when D.R. was brought back to the center, she caused $35,000 in damage to the facility and was arrested and jailed. Ms. Coburn explained that D.R. was overwhelmed and emotionally distressed by the thought of testifying. Ms. Coburn, as well as other center staff, believed that it would not be in D.R.'s best interest to testify at trial, and that if made to, D.R. could pose a danger to herself and others. In support, Ms. Coburn testified that when D.R. is emotionally distressed she becomes violent by punching and head-butting walls and throwing things at staff, she has attempted to flee the treatment center, and she has obtained illegal substances to get high when she ran away in the past. Ms. Coburn was asked how D.R.'s anxiety from testifying might be different from other children. Although Ms. Coburn never had a client testify nor had she testified before, she was familiar with court proceedings and explained that D.R.'s anxiety presents in very violent and high-risk behaviors. Finally, Ms. Coburn expressed concern that if D.R. were to testify, her treatment would regress and she would be unable to heal from the trauma. Defendant did not offer any evidence at the hearing.

**{13}**     From the foregoing, we have little difficulty concluding that the district court's finding that D.R. would suffer unreasonable and unnecessary emotional or mental harm from having to testify at trial is supported by substantial evidence. The evidence presented in support of the State's motion in this case is similar to evidence this Court found sufficient in *Vigil*. There, the minor child's treating clinical psychologist testified that the minor child's reaction was beyond the norm in terms of its severity; the minor child expressed fear, anger, and depression concerning the legal process; and testifying would undermine the minor child's therapeutic process. *Vigil*, 1985-NMCA-103, ¶ 6. This testimony "clearly qualifie[d] as substantial evidence to support the trial court's finding that the minor child would suffer unreasonable and unnecessary mental or emotional harm." *Id.* ¶ 7. Likewise, here, Ms. Coburn's testimony that D.R. was overwhelmed and emotionally distressed by the thought of testifying, it was not in D.R.'s best interest to testify, and D.R. posed a danger to herself and others and could suffer therapeutic

setbacks if required to testify was substantial evidence to support the district court's finding. *See also, e.g., Altgilbers*, 1989-NMCA-106, ¶¶ 20-21 (concluding testimony from the minor child's therapist and psychologist that testifying was likely to cause regression and a marked increase in anxiety, which would cause self-destructive behavior, was sufficient to support the district court's finding that videotaped deposition testimony outside the presence of the defendant was necessary to protect the minor child).

**{14}** Defendant disagrees, contending the evidence was "clearly insufficient." In support, Defendant lists numerous grievances he has with Ms. Coburn's testimony. Chief among them is that Ms. Coburn was the sole witness and was not offered as an expert. To the extent Defendant contends expert testimony is required at a hearing on the state's motion for a videotaped deposition, Defendant fails to cite any supportive authority. *See State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129 (providing that appellate courts will not consider an issue if no authority is cited in support and that in the absence of cited authority, we assume no such authority exists). Moreover, as the State points out, nothing in Section 30-9-17 or Rule 5-504 requires that an expert or, for that matter, any person in particular testify at such a hearing. Defendant otherwise makes various contentions about the deficiencies in Ms. Coburn's testimony, including that some of the information she relied upon appeared to be second-hand, she did not adequately explain how D.R. would be more emotionally harmed than the typical child who testifies, and she had no knowledge of the legal system. These contentions are largely unsupported by the testimony received by the district court. Regardless, they go to Ms. Coburn's credibility and the weight that should be given this testimony—matters not appropriate for our consideration on appeal. *See Vigil*, 1985-NMCA-103, ¶ 7 (providing that under substantial evidence review, "all disputed facts are resolved in favor of the successful party, with all reasonable inferences indulged in support of the finding, and all evidence and inferences to the contrary discarded"); *see also State v. Johnson*, 1983-NMSC-043, ¶ 7, 99 N.M. 682, 662 P.2d 1349 ("On appeal, we do not consider the weight of the evidence, rather we determine whether there was substantial evidence to support the [finding]."); *State v. McAfee*, 1967-NMSC-139, ¶ 8, 78 N.M. 108, 428 P.2d 647 ("It was for the [fact-finder] to determine the weight to be given the testimony and determine the credibility of the witnesses." (citations omitted)).

**{15}** In short, the district court's determination that D.R. would suffer unreasonable and unnecessary mental or emotional harm from testifying at trial is supported by substantial evidence.

**II.     Defendant Has Not Established That the State's Use of a Mislabeled Video Exhibit Constituted Prosecutorial Misconduct Rising to the Level of Fundamental Error**

**{16}** We next consider whether the State's mislabeling and use of a video exhibit of Defendant recording D.R. undressing, which was recovered from one of Defendant's electronic devices, constituted prosecutorial misconduct rising to the level of

fundamental error. Because Defendant fails to explain how this purported error was fundamental, we see no basis for reversal.

**{17}** When the State moved for admission of the video exhibit, defense counsel objected only on foundation and relevancy grounds, which were overruled. After the State rested, Defendant moved for a mistrial based on the State's use of the video exhibit. To that end, defense counsel explained that the video had been provided to the defense during discovery along with almost 500 other digital files containing pornography. The files were extracted from devices belonging to Defendant and identified in four reports prepared by the State's forensic computer examiner. The examiner wrote on the report associated with the video exhibit, "I did not locate any images that would be of value to this case." The defense apparently relied on this statement and was caught off guard when the State used the video exhibit at trial. The district court denied Defendant's motion for a mistrial, explaining that the video exhibit had been disclosed as required under the Rules of Criminal Procedure, the defense conceded the examiner's notation was not intended to deceive the defense, and the defense failed to object on the grounds it relied on in moving for a mistrial.

**{18}** Now on appeal, Defendant contends the State's mislabeling and use of the video exhibit unfairly surprised defense counsel and constituted prosecutorial misconduct. Defendant acknowledges he did not preserve this issue but asserts fundamental error.[1] *See* Rule 12-321(B)(2)(c) NMRA (permitting appellate courts to review unpreserved issues for fundamental error). "Prosecutorial misconduct rises to the level of fundamental error when it is so egregious and had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial." *State v. Trujillo*, 2002-NMSC-005, ¶ 52, 131 N.M. 709, 42 P.3d 814 (internal quotation marks and citation omitted).

**{19}** Defendant argues at length about how the State's actions amounted to prosecutorial misconduct, but says little to nothing about how the supposed misconduct meets the fundamental error standard. Although he quotes the standard defining fundamental error in the prosecutorial misconduct context, he fails entirely to explain how the State's conduct in this case was "so egregious and had such a persuasive and prejudicial effect on the jury's verdict" that he was deprived of a fair trial. *See id.*

**{20}** Nor is it apparent to us that the State's conduct here rose to that level. Had the video exhibit not been labeled at all—or had the State brought the mislabeling to the defense's attention before trial, as Defendant argues it should have—would the evidence and argument seen and heard by the jury have changed? If so, Defendant does not explain how. Without an explanation how the alleged misconduct had any effect on the proceedings or the jury's verdict, let alone a persuasive and prejudicial one

---

[1]Defendant elsewhere suggests that we should review the district court's denial of a mistrial for an abuse of discretion, but his corresponding argument consists of one short paragraph devoid of considered analysis. We therefore do not entertain it. *See, e.g., State v. Flores*, 2015-NMCA-002, ¶ 17, 340 P.3d 622 (declining to review an inadequately briefed issue, where review would require this Court to develop the defendant's argument).

compromising the fairness of Defendant's trial, *see id.*, we cannot conclude that the alleged prosecutorial misconduct rose to the level of fundamental error. *See State v. Dombos*, 2008-NMCA-035, ¶ 38, 143 N.M. 668, 180 P.3d 675 (providing that the defendant has the burden to show that prosecutorial misconduct was prejudicial); *see also Flores*, 2015-NMCA-002, ¶ 17 ("Our Court has been clear that it is the responsibility of the parties to set forth their developed arguments, it is not the court's responsibility to presume what they may have intended.").

### III. Defendant Has Not Established That the Admission of Certain Evidence Constituted Harmful Error

**{21}** Defendant challenges the district court's admission of certain evidence—contending that evidence of his medical marijuana use and uncharged sexual acts against D.R. in Valencia County constituted inadmissible bad act evidence under Rule 11-404(B) NMRA,[2] and that D.R.'s safe house interview recording constituted inadmissible hearsay. We deem it unnecessary to examine the merits of Defendant's claimed errors because, even if we assume the admission of this evidence was error, Defendant fails entirely to develop any argument as to how the error resulted in prejudice.[3]

**{22}** Even in cases where it is established that evidence was improperly admitted, reversal is not warranted if the error was harmless. *See State v. Tollardo*, 2012-NMSC-008, ¶ 25, 275 P.3d 110. Said differently, reversal is warranted only where the error caused prejudice—i.e., where there is a reasonable probability that the error contributed to the verdict. *See id.* ¶¶ 25, 36 (affirming that the reasonable probability standard applies to evidentiary errors such as the one claimed here). As our Supreme Court in *Tollardo* explained, the probable effect of an evidentiary error is determined on a case-by-case basis by considering, among other things, the circumstances of the error, the emphasis placed on the error, evidence of a defendant's guilt apart from the error, the importance of the improperly admitted evidence, and whether the erroneously admitted evidence introduced new facts or was merely cumulative. *Id.* ¶ 43. "Defendant bears the

---

[2] Defendant additionally argues that the State violated the notice provision in Rule 11-404(B)(2) (requiring the prosecution in a criminal case to give notice of its intent to introduce certain types of evidence). Even if we were to agree with Defendant that the State failed in this regard, Defendant does not explain why this failing should result in reversal. *See Flores*, 2015-NMCA-002, ¶ 17. Moreover, Defendant, in contravention of our appellate rules, does not address whether this issue was preserved. *See* Rule 12-318(A)(4) NMRA. We thus are at a loss to know whether this issue is reviewable and, if so, what standard would apply on review. *See* Rule 12-321. In absence of this, we decline to review this matter. *See State v. Rojo*, 1999-NMSC-001, ¶¶ 44-45, 126 N.M. 438, 971 P.2d 829 (providing that appellate courts will not search the record to see if an issue was preserved where the defendant did not provide appropriate record citations and, absent preservation, courts will only review claims for plain or fundamental error); *State v. Gutierrez*, 2003-NMCA-077, ¶ 9, 133 N.M. 797, 70 P.3d 787 (stating that courts normally do not review for fundamental or plain error when not requested by the appellant).

[3] The State contends that Defendant's objection to the uncharged sexual misconduct evidence was untimely, and thus not preserved, because Defendant failed to object to this evidence at the time it was received during D.R.'s videotaped deposition. We need not determine whether Defendant was required to make objections during the videotaped deposition in order to preserve the claim of error because, again, even assuming such error was preserved, Defendant has not shown it was harmful.

initial burden of demonstrating that he was prejudiced by the error." *State v. Astorga*, 2015-NMSC-007, ¶ 43, 343 P.3d 1245.

**{23}** Here, Defendant fails to adequately explain how prejudice arose from the admission of any of the challenged evidence. First, in support of his argument that the marijuana-use evidence was not harmless, Defendant contends only that "[a]t least one other court has found such erroneous admission of evidence was not harmless," citing an out-of-state case, *State v. Sage*, 2010 MT 156, 235 P.3d 1284. This is insufficient to meet Defendant's initial burden of demonstrating prejudice for a couple reasons. For one, *Sage* is distinguishable. *Sage* involved the state's repeated reference to illegal marijuana use at the defendant's home, *id.* ¶ 26, whereas here the marijuana-use evidence was limited and pertained largely to Defendant's legal medical marijuana card. Further, the error in *Sage* was reviewed under a different standard (i.e., reasonable possibility), *id.* ¶ 30, whereas here the reasonable probability standard is more demanding, *see Tollardo*, 2012-NMSC-008, ¶ 36. More problematic, however, Defendant does not discuss how the admission of this evidence amounted to prejudice in this case under the numerous considerations in *Tollardo*. *See id.* ¶¶ 43-44 (stressing the case-specific nature of harmless error review).

**{24}** Second, Defendant likewise fails to adequately analyze prejudice in regard to the evidence of his uncharged sexual acts against D.R. in Valencia County. In fact, his brief in chief entirely omits any such analysis. In his reply brief, Defendant cites the harmless error standard of review for the first time, and then states just that the State "made use of multiple [uncharged] acts to prove its case" and "discussed the [Valencia County] evidence in closing." Not only is this claim of prejudice overdue, *cf. Fairweather*, 1993-NMSC-065, ¶ 35 (declining to address an issue raised for the first time in a reply brief), but we cannot overlook its deficiencies in relation to the manifold considerations of prejudice in *Tollardo*. *See* 2012-NMSC-008, ¶ 43.

**{25}** Lastly, Defendant's claim of error regarding the safe house interview recording is similarly undeveloped. In his brief in chief, Defendant's only comment relating to prejudice is that the recording's admission meant that the jury "continued to hear about the alleged abuse that occurred in [Valencia County]." The State, in its answer brief, argues that the error, if any, was harmless, because the evidence in the recording was cumulative of evidence elicited during the videotaped deposition. To this, Defendant raises no counterargument.

**{26}** All in all, Defendant fails to analyze the probable effect of the admission of the challenged evidence on the verdicts in his case, *see id.* ¶ 36, and we will not perform that analysis for him, *see Flores*, 2015-NMCA-002, ¶ 17. Because Defendant has failed to meet his initial burden of demonstrating prejudice, *see Astorga*, 2015-NMSC-007, ¶ 42, we conclude that the admission of this evidence, even if in error, was harmless.

## IV. The Denial of Defendant's Requested Jury Instructions Was Not Error

**{27}** Defendant next argues for reversal based on one or both of two instructional omissions: (A) the district court's denial of the defense's request for an instruction concerning Defendant's midtrial withdrawal, and (B) the court's denial of the defense's request that the instructions defining the crimes include the county in which they occurred. Neither of the omissions was error.

**{28}** We review Defendant's arguments for reversible error, since they were preserved. *See State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134. Under this standard, "we seek to determine whether a reasonable juror would have been confused or misdirected by the jury instruction[s]." *Id.* (internal quotation marks and citation omitted). Such confusion or misdirection "may stem not only from instructions that are facially contradictory or ambiguous, but from instructions which, through omission or misstatement, fail to provide the juror with an accurate rendition of the relevant law." *Id.*

## A.     Defendant's Midtrial Absence

**{29}** Defense counsel's first instructional request was prompted by Defendant not returning to trial after a recess on the last day.[4] It appears no one knew the reason for Defendant's absence at the time—i.e., whether it involved circumstances beyond his control or if he simply chose to no longer attend his trial. In any event, defense counsel requested the district court to direct the jury, in reaching its verdict, to draw no inference from Defendant's midtrial withdrawal; the district court denied the request. Because Defendant does not persuade us that the district court's omission of his requested instruction was error, we reject his contention.[5] *See State v. Peters*, 1997-NMCA-084, ¶ 31, 123 N.M. 667, 944 P.2d 896 ("On appeal, [the d]efendant must show that the instruction given was erroneous and prejudicial.").

**{30}** In support of his argument, Defendant cites no uniform jury instruction (UJI) or New Mexico case requiring such an instruction be given. Instead, Defendant cites two out-of-state cases, *State v. Staples*, 354 A.2d 771 (Me. 1976), and *People v. Anglin*, 136 Misc. 2d 987, 519 N.Y.S.2d 586 (N.Y. Crim. Ct. 1987)—neither of which are helpful to Defendant's claim that the failure to give the requested instruction resulted in reversible error. *Staples* explained that, when a defendant absents himself from trial, the trial court should proceed in a manner that is fair to both the state and the defendant, providing:

> [W]hen it is feasible, the jury should be informed *only* that the defendant has made a choice not to be present at the trial. In situations where the

---

4The district court issued a bench warrant for Defendant's arrest, and he was arrested twenty days later. Defendant was subsequently charged and convicted of failure to appear.

5Defendant secondarily complains that he was prejudiced by a comment the prosecutor made in closing argument, i.e., that Defendant "fled justice," and by the district court's overruling the defense's objection to it. Defendant contends that overruling the objection "essentially invited the prosecutor to commit further misconduct" where there was no proof that Defendant was, in fact, absconding. Insofar as this contention, bare of corresponding argument, can be construed as an additional claim of prosecutorial misconduct or district court error, the claim's lack of development precludes review. *See Flores*, 2015-NMCA-002, ¶ 17.

knowledge of a defendant's absconding cannot reasonably be kept from the jury—for example, a defendant could run away from the courtroom in the very presence of the jury—the [c]ourt *may* rely upon an instruction that the defendant's act of fleeing must not be given weight on the issue of guilt or innocence.

354 A.2d at 779 (emphases added). Of significance, *Staples* provides that no instruction be given under the circumstances in this case—i.e., where the jury did not know whether Defendant absconded. Moreover, even if Defendant had absconded and the jury was aware of that fact, *Staples* does not mandate that the jury be instructed to draw no inference. Nor does *Staples* address whether the failure to give such an instruction would constitute reversible error. *Anglin*, meanwhile, determined, under the circumstances of that case, that the prosecution was entitled to an instruction that consciousness of guilt may be inferred from evidence of flight. *See* 519 N.Y.S.2d at 587-89. *Anglin* offers no support for Defendant's contention here—that he was entitled to an instruction saying that the jury may draw *no* inference from his failure to return to trial.

**{31}** In the absence of persuasive authority indicating that an instruction like the one Defendant requested must be given, we cannot conclude the district court's refusal to give such an instruction constituted reversible error. *See Vigil-Giron*, 2014-NMCA-069, ¶ 60; *State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211 ("There is a presumption of correctness in the district court's rulings" and "it is [the d]efendant's burden on appeal to demonstrate any claimed error below." (alterations, internal quotation marks, and citation omitted)).

## B.    County of Charged Crimes

**{32}** Defendant next argues that the district court erred in denying his request to include the county of the offense in each jury instruction defining the crimes charged. This issue arose because, although all the charged crimes were alleged to have occurred during a particular timeframe in Otero County, some of the evidence at trial was of Defendant's sexual acts against D.R. during a previous timeframe in Valencia County. Contending this would create confusion in the minds of the jury, defense counsel asked that the instructions premise guilt for each crime on a finding that the crime happened not in New Mexico, generally, as the applicable UJIs provide, *see* UJI 14-925 NMRA; UJI 14-957 NMRA, but more specifically in Otero County. The district court denied the request. We conclude this was not error for two reasons.

**{33}** First, the district court's refusal to instruct the jury on the county of venue was both consistent with the UJIs and accurately represented the law. The general use note for the criminal UJIs directs trial courts using those instructions to do so "without substantive modification or substitution" and permits alterations only when "necessary . . . to accurately convey the law[.]" UJI-Criminal General Use Note; *see also State v. Caldwell*, 2008-NMCA-049, ¶ 24, 143 N.M. 792, 182 P.3d 775 ("When a [UJI] exists, that instruction must be used without substantive modification."). As relevant here, the

instructions for the charged offenses require only that the jury find the alleged conduct occurred in New Mexico, not in any particular county. *See* UJI 14-925; UJI 14-957. This is consistent with longstanding authority in New Mexico that jury instructions need not reflect the particular county in which a crime is alleged to have occurred because this is not a necessary jury determination. *See* UJI-Criminal General Use Note comm. cmt. ("The elements instructions in UJI Criminal do not require the jury to find that the crime occurred within the county of venue."); *accord State v. Wise*, 1977-NMCA-074, ¶ 18, 90 N.M. 659, 567 P.2d 970 ("[A]n instruction on venue need not be given because, so long as the crime occurred in New Mexico, the county of the crime is not a necessary jury determination."). In short, the district court's refusal to instruct the jury on the county of venue was both consistent with the UJIs and an accurate rendition of the law.

**{34}** Second, Defendant's contention that, without the addition of the county of venue to the UJIs, "[t]he jury was likely to be misdirected or confused . . . by the [Valencia County] acts" is without merit. For each of the charged offenses, the given jury instruction described the nature of the charged conduct and the approximate date of the charged conduct. The charged acts were different in nature from those alleged to have occurred in Valencia County—e.g., penetration with Defendant's fingers versus his penis—and were alleged to have occurred later in time—e.g., late 2015 to early 2016 versus earlier in 2015. The descriptive details given in the jury instructions enabled the jury to differentiate between the Otero County and Valencia County conduct, and a reasonable juror would not have been confused or misdirected into convicting Defendant for the Valencia County acts under the given instructions. *See Benally*, 2001-NMSC-033, ¶ 12. Moreover, the defense was free to, and in fact did, clarify for the jury that all the charged conduct was alleged to have happened in Otero County, and that it should not base its verdict on evidence of acts that happened in Valencia County.

**{35}** In sum, because the instructions did not fail to provide the jury with an accurate rendition of the law or otherwise confuse or misdirect the jury, the district court did not err by refusing Defendant's request to have the county of the offense added to the charging instructions.

## V.    There Was No Cumulative Error

**{36}** Finally, Defendant contends that the cumulative effect of the claimed errors made his trial unfair. *See State v. Martin*, 1984-NMSC-077, ¶ 17, 101 N.M. 595, 686 P.2d 937 ("Cumulative error requires reversal of a defendant's conviction when the cumulative impact of errors which occurred at trial was so prejudicial that the defendant was deprived of a fair trial."). Although we have assumed certain errors in this appeal, Defendant failed to develop any argument why these purported errors warrant reversal and he again fails to develop any such argument for his claim of cumulative error. We therefore decline to review this argument further. *See Flores*, 2015-NMCA-002, ¶ 17.

## CONCLUSION

**{37}** For the foregoing reasons, we affirm Defendant's convictions.

**{38}** IT IS SO ORDERED.

JENNIFER L. ATTREP, Judge

WE CONCUR:

J. MILES HANISEE, Chief Judge

BRIANA H. ZAMORA, Judge